The STATE of Ohio, Appellee,

v.

COOK, Appellant.

[Cite as *State v. Cook* (2001), 143 Ohio App.3d 386.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78084.

Decided May 14, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Dennis L. Morgan,* Assistant Prosecuting Attorney, for appellee.

*James A. Draper,* Cuyahoga County Public Defender, and *Carlos Warner,* Assistant Public Defender, for appellant.

MICHAEL J. CORRIGAN, Presiding Judge.

The grand jury returned a single count indictment charging defendant Fernando Cook, a.k.a. Mosi Shakur, with possession of PCP. Prior to trial, defendant asked the court to suppress evidence of the PCP, claiming that the police found the PCP in his car while conducting an illegal inventory search of the car. The court denied the motion, and defendant subsequently pleaded no contest to the charge of drug possession. The sole issue raised on appeal is whether the police lawfully impounded defendant's vehicle, a predicate to the court's finding that the police conducted a valid inventory search of the car.

We accept as true the court's factual findings, *State v. Hopfer* (1996), 112 Ohio App.3d 521, 679 N.E.2d 321, but independently determine, as a matter of law, whether those factual findings meet the applicable standard of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144. Those factual findings show that two police officers were patrolling an area known for drug activity and saw defendant urinating on the outside wall of a bar. The

officers approached him, found him to be intoxicated, and immediately noticed a strong smell of PCP. Knowing that persons on PCP can become violent, the officers frisked defendant for weapons. The officers told defendant that they were arresting him for disorderly conduct and public intoxication. Defendant then reached into his coat and pulled out car keys, telling the officers that he had to take his car home. The officers asked defendant where he left his car, and defendant pointed to a car parked across the street, about twenty feet away from where they stood. The officers determined that the car was registered to defendant. Defendant said that he told the officers that he did not have a valid driver's license. Citing a city of Cleveland Police Department general order, the officers had the car towed. One of the officers said that they towed the vehicle for safekeeping because there was no one else available to take the car. While conducting their inventory of the car, the officers found on the floor in the back of the car a small vial containing traces of PCP.

The "inventory exception" to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle. See *South Dakota v. Opperman* (1976), 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000, 1009; *State v. Mesa* (1999), 87 Ohio St.3d 105, 108–109, 717 N.E.2d 329, 332–333. The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. *South Dakota v. Opperman*, 428 U.S. at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5.

*State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, paragraph one of the syllabus, states, "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (Citations omitted.)" Standardized procedures upon impoundment are required in order to ensure that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells* (1990), 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1, 6.

In *Colorado v. Bertine* (1987), 479 U.S. 367, 375–376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739, 747–748, the United States Supreme Court appeared to approve without conditions vehicle impoundments if they are routine and are authorized by standardized procedures. See, also, *State v. Goodin* (Jan. 28, 2000), Athens App. No 99CA29, unreported, 2000 WL 134733. The reason is that standardized procedures take away any discretion, thus eliminating the possibility that an impoundment might be used as a ruse for uncovering incriminating evidence.

Standardized procedures might take the form of statutes or laws authorizing impoundment. See, *e.g.,* R.C. 4507.38(B)(1) (authorizing impoundment when a driver is operating a vehicle with a suspended license); R.C. 4509.101(B)(1)(a) (authorizing impoundment when a person is operating a vehicle without proof of financial responsibility); R.C. 4511.195 (authorizing impoundment for certain OMVI violations). Defendant testified at the suppression hearing that he told the officers that he was not supposed to be driving because he did not have a valid driver's license. This would have made the impoundment lawful.

Standardized procedures can also be found in police regulations or municipal ordinances authorizing impoundment. See, *e.g., State v. Gordon* (1994), 95 Ohio App.3d 334, 338, 642 N.E.2d 440, 442 (vehicle lawfully impounded when city of Cleveland Police Department's written police regulations and established police procedure required that the vehicle be impounded); *State v. Robinson* (Oct. 25, 2000), Summit App. No. 19905, unreported, 2000 WL 1587007 (lawful impoundment made after arrest pursuant to city of Akron Police Department policy); *cf. Rocky River v. Saleh* (2000), 139 Ohio App.3d 313, 743 N.E.2d 944 (tacit approval of vehicle impoundment pursuant to municipal ordinance providing for impoundment of a vehicle when the driver of the vehicle is operating it without a lawful license or while his license is suspended).

One of the officers testified that he impounded the vehicle pursuant to a police department general order. The order is not in the record, but its absence is of no consequence. Testimony introducing standard policy procedures is sufficient to show lawful reasons for impoundment. See *State v. Semenchuk* (1997), 122 Ohio App.3d 30, 40, 701 N.E.2d 19, 25–26. Absent any specific argument by defendant that the police policy was a ruse for discovering incriminating evidence, we find the court did not err by finding the impoundment of defendant's care to be lawful.

Even if there were no statutory or policy basis for the impoundment, we would nonetheless find the impoundment lawful because the evidence shows that the police impounded defendant's car in order to keep it safe. In *South Dakota v. Opperman,* 428 U.S. at 368–369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005, the United States Supreme Court stated:

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking

ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." (Citations and footnote omitted.)

One of the caretaking functions permitted is the impoundment of a vehicle in order to protect it from theft, vandalism, or negligence. See *Colorado v. Bertine*, 479 U.S. at 373, 107 S.Ct. at 742, 93 L.Ed.2d at 746–747.

The evidence showed that after being arrested, defendant pulled out his car keys and told the police that he had to move his car. Defendant was intoxicated and incoherent—in no condition to drive. Although there was some disagreement at oral argument as to where defendant parked the car, defendant's own testimony during the suppression hearing showed that his car was parked "on this side of the street"—meaning that it was parked in the street and not in a private parking lot. The street was in a high crime area and defendant had no one available to move it. The officers decided to tow the car "in connection not only with his arrest but for safekeeping." Defendant was alone, he owned the car, and he had no one available to remove it from a high crime area. In the interests of protecting both the car and the city's interest against being held accountable for the contents of the car while defendant remained under arrest, the police lawfully impounded the car. These were lawful reasons justifying impoundment. See *State v. Conforti* (Nov. 29, 1990), Cuyahoga App. No. 59474, unreported, 1990 WL 183918; *United States v. Kornegay* (C.A.10, 1989), 885 F.2d 713.

Defendant cites to our decision in *State v. Collura* (1991), 72 Ohio App.3d 364, 594 N.E.2d 975, in support of his argument that the police did not need to impound his vehicle. *Collura* is distinguishable. Collura and a friend drove Collura's car to a police station on a civil matter. The police arrested Collura after discovering that there were outstanding warrants against him. Because the police station parking lot did not permit overnight parking, the police impounded Collura's car. This court found the impoundment unlawful because Collura had a friend available to remove the car and no pressing concern required impounding.

In this case, defendant expressed concern for his car, but had no one available to move the car. Although there is no evidence to suggest that the car had been parked illegally, it was parked in an area known for its criminal activity. Given these circumstances, the police rationally decided to remove the car from the street for safekeeping.

We find the court did not err by finding the police lawfully impounded defendant's car. The assignment of error is overruled.

*Judgment affirmed.*

TERRENCE O'DONNELL, J., concurs.

ANN DYKE, J., concurs separately.

ANN DYKE, Judge, concurring.

I agree that impounding appellant's car was lawful under the facts of this case. A police officer testified that a Cleveland Police Department general order mandated impounding the vehicle for its safekeeping. The vehicle was parked in a high crime area, appellant could not drive the vehicle, and no one else was available to move the vehicle.

Respectfully, I disagree that the impoundment was lawful on the grounds that appellant was operating a vehicle without a license. Appellant was not in the vehicle when he was arrested. Although appellant admitted that he did not have a license, there was not sufficient evidence to show that appellant operated the vehicle. Appellant testified that he told the police that he had not been operating the vehicle. The police officers did not testify that appellant said he had been driving the car.

I also disagree that *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739, stands for the proposition that any impoundment is valid if it is routine and authorized by standard procedures. The impoundment procedures must still be reasonable and for a legitimate concern, such as public safety, protecting the defendant's property, protecting the police from accusations of mishandling property or the safety of the police. See *State v. Mesa* (1999), 87 Ohio St.3d 105, 717 N.E.2d 329; *State v. Collura* (1991), 72 Ohio App.3d 364, 594 N.E.2d 975.