JOURNAL ENTRY AND OPINION
{¶ 1} This appeal is brought by defendant-appellant Darlene Delraye[1] ("defendant") based upon the trial court's denial of her motion to suppress and her convictions for receiving stolen property,[2]
possessing criminal tools[3] and falsification.[4] For the following reasons, we affirm.
{¶ 2} On March 29, 2000, the defendant was indicted by the Cuyahoga County Grand Jury and trial commenced on March 14, 2001, wherein the jury found defendant guilty as charged in the indictment. The trial court imposed a sentence of imprisonment for sixteen months on count one, eight months on count two and nine months on count three.
{¶ 3} The defendant's convictions were based upon her alleged involvement as the ring leader of her six family members, who were tried separately, in an elaborate scheme to defraud the GAP clothing stores.[5]
The offenses occurred on March 10, 2000, at the GAP located at the Westlake Promenade Shopping Center, in Westlake, Ohio.
{¶ 4} The State presented the testimony of Westlake Police Officer Mark Krumheuer who stated that on March 10, 2000, he was working off duty security for the Promenade. The GAP employees discussed with Officer Krumheuer the problems they were having with the Burnett family and Officer Krumheuer instructed them to alert him if the assistance of the police was necessary. Later that evening, Officer Krumheuer was dispatched to the GAP store. The Burnett family frequented the store and was suspected of returning stolen merchandise. Officer John Jareb joined Officer Krumheuer and from a concealed position outside of the store they observed one of the male family members, Roderic Burnett, shoplifting merchandise by placing it in a shopping bag.
{¶ 5} The State also presented the testimony of GAP assistant manager, Cynthia Zatrock, who stated that defendant and the other group members entered the store carrying large bags filled with merchandise. Four of the group members, including the defendant proceeded immediately to the registers and began loudly demanding refunds. All of the refunds were honored, save one for a suede jacket due to an altered receipt. When this refund was refused, the defendant became angry.
{¶ 6} During this time, four of the members were keeping four clerks busy at the registers leaving only one clerk to oversee the merchandise area filled with 50 to 60 shoppers. The officers entered the store and proceeded to arrest Roderic Burnett whom they had observed shoplifting.
{¶ 7} The Burnett family was well known to the GAP store employees. Zatrock testified that in her experience the group always returned large quantities of similar size merchandise, mostly small sizes of the same item of clothing. She stated the group was always loud and intentionally confused the clerks at the register. The Burnett family techniques included the use of intimidation, distractions, shuffling of merchandise and complaints for the clerks to hurry. They always requested gift receipts in addition to the purchase receipt, which could be used to return additional stolen items.
{¶ 8} GAP Manager Susan Peters testified she was familiar with the Burnett family from her dealings with them over the past six years at several store locations. She stated that defendant always instructed the clerks how to process each type of transaction demanded. If the clerks did not comply, the Burnett family threatened to contact customer service with allegations of racial discrimination. Due to the GAP's zero tolerance policy, even an allegation of racial discrimination could subject an employee to termination.
{¶ 9} Peters testified that receipts were being used to return multiple items of the same merchandise and numerous sizes that did not appear would fit the person returning it. In her experience the group returned more items and received more money back than they purchased. Typically the items returned did not match the receipts and the receipts appeared to be tampered with or altered. Suspicious refunds were approved and issued despite the possibility of wrongdoing because the clerks were intimidated by the Burnett family.
{¶ 10} AnotherGAP employee, Brenda Wittman, testified that on the evening of March 10, 2000, the group entered the store and fanned out. The defendant placed large amounts of merchandise on the counter and began instructing the young high school clerks as to which items were to be purchased or returned. Notably, the group knew where the store kept large denomination bills in its drop safe, which is not public knowledge. The group's behavior was rude and disrespectful. Wittman stated that the group yelled all at once and confused the clerks.
{¶ 11} While Officer Krumheuer arrested Roderic Burnett, the defendant claimed he was her juvenile son, attempted to pass him receipts and interfered with the investigation. At this point the atmosphere became chaotic. The group was loud and attempted to create confusion during the police investigation. Roderic Burnett unsuccessfully attempted to pass the defendant a pouch he was carrying.
{¶ 12} The group provided false information to the police as to their identities and ages, and the way that they arrived at the store. Although they claimed to have taken public transportation, they were unable to provide bus schedules, numbers or route information. During a pat down of the defendant, the officers discovered her keys and located her vehicle in the parking lot. The back seat and trunk of her vehicle contained a voluminous amount of new GAP merchandise still bearing the tags and valuing $6,019.45. A second vehicle registered to another member of the group was also inventoried and further GAP merchandise and receipts were found.
{¶ 13} Westlake Detective Timothy Tolaro compiled a spreadsheet of all receipts and merchandise found in the Burnett family's possession. Det. Tolaro concluded that the total purchases of $8,969.29 was outweighed by the return receipts in the amount of $11,544.82. The purchase and gift receipts seized did not match the merchandise found in defendant's possession or in her vehicle. The group used altered gift receipts to return the same items more than once. Many of the returns and purchases did not match the quantity of merchandise seized. In fact there were 14 transactions relating to only four suede jackets.
{¶ 14} The defendant timely filed her appeal and now submits three assignments of error for our review.
 {¶ 15} I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CHARGE OF RECEIVING STOLEN PROPERTY AND POSSESSION OF CRIMINAL TOOLS.
{¶ 16} Within this assignment of error, the defendant challenges the sufficiency of the evidence supporting her convictions. The defendant contends that no evidence exists that proves that the merchandise found inside the trunk of her vehicle was stolen and therefore she could not be found guilty of receiving stolen property or having possession of a criminal tool.
{¶ 17} When reviewing a challenge to the sufficiency ofevidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749.
{¶ 18} Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
{¶ 19} R.C. 2913.51 defines the offense of receiving stolen property:
{¶ 20} 2913.51 Receiving stolen property.
 {¶ 21} (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
{¶ 22} R.C. 2923.24 defines the offense of possessing criminal tools:
{¶ 23} 2923.24 Possessing criminal tools.
 {¶ 24} (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
{¶ 25} A fact may be proved to a moral certainty by circumstantial evidence as well as direct evidence. State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362. In State v. West, Cuyahoga App. No. 79404, 2002-Ohio-2242, at ¶ 93-94, we stated:
 {¶ 26} Absent an admission by a defendant, whether there was reasonable cause for a defendant to know if an item was stolen can only be shown by circumstantial evidence. See State v. Hankerson
(1982), 70 Ohio St.2d 87, 92, 434 N.E.2d 1362. Factors to be considered in determining whether reasonable minds could conclude whether a defendant knew or should have known property has been stolen include:
 {¶ 27} `(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the theft and the recovery of the merchandise.' State v. Davis
(Cuyahoga, 1988), 49 Ohio App.3d 109, 112, 550 N.E.2d 966, quoting State v. Brooks (Feb. 27, 1986), 1986 Ohio App. LEXIS 5735, Cuyahoga App. No. 50384, unreported.
{¶ 28} Applying the foregoing test, there is sufficient evidence that the defendant received, retained and disposed of merchandise that she had reasonable cause to believe was, in fact, obtained by theft. Circumstantial evidence, viewed in the light most favorable to the prosecution, permits the inference that the GAP merchandise found in the defendant's possession and in her vehicle was stolen. The defendant possessed purchase receipts, gift receipts, price tags and over $6,000 in GAP merchandise. There is no evidence that she was employed. The receipts did not match the merchandise, and were often altered and tampered with. The State's evidence included the group's utilization of intimidation, fear, confusion and claims of racial discrimination in order to effect their scam. Reasonable minds could find that the State proved the essential elements of the crimes. Circumstantial and direct evidence exists that the defendant received stolen property and that her vehicle was used as a criminal tool for the transportation and concealment of the stolen property. The vehicle was used in aid of her criminal activity. Although the State did not present a witness to testify that the defendant was actually observed committing a theft, overwhelming circumstantial evidence exists for the trier of fact to base its inference upon. Therefore, we find that the defendant's convictions are supported by sufficient evidence and defendant's first assignment of error is overruled.
 {¶ 29} II. THE ADMISSION OF UNFAIRLY PREJUDICIAL OTHER ACTS EVIDENCE DEPRIVED THE APPELLANT HER RIGHT TO A FAIR TRIAL.
{¶ 30} In this assignment of error the defendant argues that evidence of her criminal activity which occurred after the offenses for which she was charged herein should not have been admitted. The defendant contends that there is no substantial proof that the other acts were committed by her; the evidence is not inextricably related to the crime; and the evidence is unfairly prejudicial.
{¶ 31} Cheektotwaga, New York Police Detective Lieutenant Eugene Leahy testified of defendant's arrest, along with her family members, on May 22, 2000. Lt. Leahy positively identified the defendant as one of the Burnett family members arrested for theft offenses in New York. The arrests were based on similar criminal activity at the GAP store in Cheektotwaga, which involved shoplifting and the return of large volumes of GAP merchandise using gift receipts and chemically altered receipts. Surveillance videotape showed the Burnett family perpetrating a "gypsy type scam" on the GAP store. Defendant used distraction, commotion and intimidation at the registers while the other family members placed stolen clothing in their shopping bags.
{¶ 32} Lt. Leahy related that the evidence seized from the Burnett family persons and vehicles, included GAP clothing valuing $7,035, cash in the amount of $9,400, $1,500 in GAP gift return cards and $4,700 in GAP merchandise found in their shopping bags.
{¶ 33} Evid.R. 404(B) provides:
{¶ 34} (B) Other crimes, wrongs or acts.
 {¶ 35} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
{¶ 36} We agree that this evidence is admissible under Evid.R. 404(B) and is substantial proof of defendant's motive, opportunity, intent, preparation, plan and knowledge. It is relevant that defendant was arrested for the same criminal activity only two months later in New York.
{¶ 37} "If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible." State v. Broom (1988), 40 Ohio St.3d 277, 282-283,533 N.E.2d 682.
{¶ 38} Defendant contends that the evidence of her other acts is unfairly prejudicial to her case and is barred by Evid.R. 403(A), which provides:
{¶ 39} (A) Exclusion mandatory.
 {¶ 40} Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
{¶ 41} We addressed this issue in State v. West, supra, and now follow the same analysis. "It cannot be questioned that any evidence which points to the guilt of a defendant in a criminal case is prejudicial to the defense. For our purposes, the question is whether that evidence is unduly prejudicial." West, at ¶ 75.
{¶ 42} In deciding whether the admission of other acts evidence was unduly prejudicial in this case, we are guided by the balancing test set forth in State v. Broom, at 283 Fn. 1.
 {¶ 43} Chief Justice Rehnquist, writing for a unanimous court in Huddleston v. United States
(1988), 485 U.S. 681, 99 L.Ed.2d 771, 108 S.Ct. 1496, held that the trial court's determination of whether admission of other acts is unduly prejudicial turns upon consideration of whether the evidence is offered for a proper purpose (Fed.R.Evid. 404[b]), whether it is relevant (Fed.R.Evid. 402) (could the jury reasonably conclude that the other act occurred and that the defendant was the actor), whether the probative value of evidence of the other acts substantially outweighs the potential for unfair prejudice (Fed.R.Evid. 403), and whether the jury, upon request, is instructed that the evidence is to be considered only for the proper purpose for which it was admitted (Fed.R.Evid. 105). The standard of proof in federal civil and criminal cases for admission of "other acts" is merely one of sufficiency of evidence to support a finding by the jury that the defendant committed the other act.
{¶ 44} We find that evidence of defendant's other acts was admitted for the proper purpose under Evid.R. 404(B). The jury was correctly instructed that the evidence was not to be considered as character evidence and was provided only for the limited purpose of establishing defendant's motive, opportunity, intent, preparation and plan to commit the offenses charged. The evidence was not unduly prejudicial to the defendant as the State presented abundant evidence to convict her without the introduction of her other acts.
{¶ 45} The defendant's second assignment of error is overruled.
 {¶ 46} III. THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
{¶ 47} This court set forth the standard of review of a trial court's judgment with regard to a motion to suppress in State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172. We stated:
 {¶ 48} In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
{¶ 49} The Fourth Amendment to the United States Constitution provides:
 {¶ 50} The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
{¶ 51} The defendant contends that her Fourth Amendment right to be secure from unreasonable search and seizure was violated. The defendant contends that the search was not a lawful search incident to arrest because she was not near her vehicle and that it cannot be classified as an inventory search. We disagree and find the inventory search to be permissible pursuant to a lawful impoundment of the vehicle.
{¶ 52} At the February 20, 2001, suppression hearing, the defendant challenged the legality of the impoundment and subsequent inventory search of her vehicle. The trial court denied the defendant's motion to suppress and relied on City of Oakwood v. Juliano (Dec. 16, 1999), Cuyahoga App. No. 75160, in which we stated:
 {¶ 53} Inventory searches of automobiles have consistently been upheld by the United States Supreme Court as permissible warrantless searches in cases where vehicles are "impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the contents." S. Dakota v. Opperman
(1976), 428 U.S. 364, 373, 49 L.Ed.2d 1000, 96 S.Ct. 3092. The Ohio Supreme Court has also upheld the standard inventory search of a lawfully impounded vehicle "when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of an impounded vehicle." State v. Robinson (1979), 58 Ohio St.2d 478, 480, 391 N.E.2d 317. The inventory exception to the warrant requirement exists in order to promote the public policies of (1) protecting an owner's property while it is in police custody, (2) insuring against a claim of lost, stolen or vandalized property, and (3) guarding police from danger. Florida v. Wells (1990), 495 U.S. 1, 4, 109 L.Ed.2d 1, 110 S.Ct. 1632.
{¶ 54} The State presented the testimony of Det. Tolaro who stated that defendant possessed the keys to her vehicle and that he located the defendant's vehicle within the parking lot. He then impounded and inventoried the vehicle in accordance with Westlake Police Department directives. Det. Tolaro testified that the vehicle was impounded incident to the lawful arrest of defendant and due to its improper registration by displaying fictitious license plates.[6]
{¶ 55} Det. Tolaro stated that the purpose of impounding the vehicle and inventorying its contents is to safeguard the vehicle, protect the owner's property and to protect the City from liability should the vehicle be damaged or stolen. Det. Tolaro testified there was a higher incident of crime where the vehicle was parked and that there were no other passengers who could have moved the vehicle. Also, based on the fictitious license plates it is the Westlake policy to impound the vehicle.
{¶ 56} In State v. Hathman (1992), 65 Ohio St.3d 403,604 N.E.2d 743:
 {¶ 57} To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (South Dakota v. Opperman)[1976], 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; Colorado v. Bertine
[1987], 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and Florida v. Wells [1990], 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)
{¶ 58} In State v. Cook (2001), 143 Ohio App.3d 386, 389-390,758 N.E.2d 213, we recently stated:
 {¶ 59} In Colorado v. Bertine (1987), 479 U.S. 367, 375-376, 93 L.Ed.2d 739, 107 S.Ct. 738, the United States Supreme Court appeared to approve without conditions vehicle impoundments if they are routine and are authorized by standardized procedures. See, also, State v. Goodin, 2000 Ohio App. LEXIS 370 (Jan. 28, 2000), Athens App. No 99CA29, unreported. The reason is that standardized procedures take away any discretion, thus eliminating the possibility that an impoundment might be used as a ruse for uncovering incriminating evidence.
 {¶ 60} Standardized procedures might take the form of statutes or laws authorizing impoundment. See, e.g., R.C. 4507.38(B)(1) (authorizing impoundment when a driver is operating a vehicle with a suspended license); R.C. 4509.101(B)(1)(a) (authorizing impoundment when a person is operating a vehicle without proof of financial responsibility; R.C. 4511.195
(authorizing impoundment for certain OMVI violations).
{¶ 61} Det. Tolaro testified that it was Westlake's written standard policy to impound and tow the vehicle and that it would not have been legal for anyone else to operate the vehicle. Testimony of the standard policy procedures is sufficient to show the lawful reason for impoundment. State v. Cook, supra, at 390. Furthermore, the caretaking function permitted the impoundment of the vehicle in order to protect it from theft, vandalism and negligence. Id. at 391.
{¶ 62} Defendant relies on State v. Collura (1991),72 Ohio App.3d 364, 594 N.E.2d 975, for her argument that the impoundment violated her Fourth Amendment right. However, Collura is distinguishable from the instant case. In Collura, the defendant's vehicle was impounded because it was parked in the police station parking lot which did not permit overnight parking. The impoundment was not permitted because the defendant had a friend available to remove the vehicle. Here, even if someone was available to remove the vehicle, it would have been unlawful for anyone to operate it bearing the fictitious plates. Defendant's third assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., AND TERRENCE O'DONNELL, J., CONCUR
[1] The record reveals that the witnesses knew the defendant by her aliases, including, Darlene Burnett, Rachel Burnett, Beverly Burnett, Cerethia Burnett, Darlene Ford and Asia McQueen.
[2] R.C. 2913.51.
[3] R.C. 2923.24.
[4] R.C. 2921.13.
[5] The defendant was indicted along with Amber Burnett, Leonard Burnett, Roderic Burnett, Horace Burnett and Sherry West.
[6] The 1993 Lincoln bore the license plates to a 1988 Dodge station wagon registered to Alicia Douglas and the VIN identified that the vehicle was registered to a third individual. The officer learned that defendant had not made a complete down payment to the lienholder and the vehicle was subsequently repossessed.