{¶ 1} Defendant-appellant Julius Joiner appeals the trial court's denial of his motion to suppress search warrants for an apartment on Green Road in Cleveland and one in Bedford Heights. After the motion to suppress was denied, defendant pleaded no contest to four counts: two for possession of drugs, one for preparation of drugs for sale, and one for possession of criminal tools.
 {¶ 2} The issuance of the search warrant in question was based on an affidavit sworn by a federal Drug Enforcement Agency ("DEA") agent to a Cuyahoga County Common Pleas judge. The affidavit stated that the federal agent had kept defendant, along with some other people defendant associated with, under surveillance. The affidavit specifies the activities observed on a few consecutive days in October 2000, but it does not indicate the length of time this surveillance entailed.
 {¶ 3} Much of the information in the affidavit came from a confidential informant ("informant") "who has successfully worked with the DEA, the Euclid PD[1] and the Caribbean Gang Task Force on various investigations and has resulted in various arrests and search warrants." This informant had seen defendant deliver one half ounce or more of heroin to a known Cuyahoga County heroin dealer and told the agent that there was a connection between a known Lake County heroin dealer and Sharlene Moore, a woman seen associating with defendant. The informant also related that Moore was a delivery person for the Lake County dealer and made five to seven deliveries every couple of days.
 {¶ 4} The agent himself had personally observed Moore meeting briefly with defendant in the apartment on Green Road. After defendant and Moore left the apartment, the agent met Moore at another residence and made an undercover buy of heroin from her. In the affidavit, the agent stated that he knew that the Green Road apartment was being rented in Moore's name, although she actually was living at an address in Shaker Heights. Because it is common practice among drug dealers to have a woman rent an apartment for them where they deal the drugs, the agent believed that this Green Road apartment was a cover for defendant's drug operation. The agent stated that defendant actually lived in Bedford Heights, in an apartment rented in the name of his girlfriend.
 {¶ 5} With this information, the agent obtained search warrants for both the Green Road apartment and Joiner's Bedford Heights address. The warrant for the Green Road apartment is addressed to "ADMINISTRATOR OF THE UNITED STATES DRUG ENFORCEMENT AGENCY, (DEA), AND/OR SPECIAL AGENT JOHN CLAYTON, BADGE # 5127 OF THE DEA AND/OR THE CHIEF OF THE CLEVELAND POLICE DEPARTMENT, AND/OR ANY AND ALL LAW ENFORCEMENT OFFICERS AS NEEDED." The warrant for the Bedford Heights address is identical except it substitutes the Bedford Heights police for the Cleveland police.
 {¶ 6} The agent and the local police then proceeded to the Green Road address. As defendant was leaving the parking lot of an apartment building on Green Road, a DEA agent stopped him and informed him that the agent had a search warrant for an apartment that defendant had a key to. The agent explained at the suppression hearing that he stopped defendant because it would be more convenient to enter the apartment with a key. When defendant learned that the agent and the local detectives were police officers, he became belligerent and, according to the DEA agent, "knocked out" a couple of police officers before he was subdued.[2] He was then arrested when he punched out the police officers.
 {¶ 7} Defendant argues that several aspects of the search warrant are defective. In its brief in opposition to the motion to suppress, the state concedes that the affidavit was poorly drafted. Defendant states four assignments of error. The first assignment of error states:
I. The Trial Court Committed Reversible Error When It Failed To Grant Defendant-appellant's Motion To Suppress On The Ground That A Federal Agent Has No Authority To Request Or Execute A State Search Warrant.
 {¶ 8} Defendant argues that Crim.R. 41 limits the persons from whom a search warrant may be requested or to whom a search warrant may be issued. Because the DEA agent was a federal agent and not a state officer, defendant claims the search warrant is void ab initio and the evidence must be suppressed.
 {¶ 9} The issuance of a search warrant is addressed in Crim.R. 41, which states in pertinent part:
 {¶ 10} "(A) Authority to issue warrant. A search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a lawenforcement officer." Emphasis added.
 {¶ 11} A law enforcement officer is defined in Crim.R. 2(J), which states in pertinent part:
 {¶ 12} "`Law enforcement officer' means a sheriff, deputy sheriff, constable, municipal police officer, marshal, deputy marshal, or state highway patrolman, and also means any officer, agent, or employeeof the state or any of its agencies, instrumentalities, or politicalsubdivisions, upon whom, by statute, the authority to arrest violators is conferred, when the officer, agent, or employee is acting within the limits of statutory authority." Emphasis added. This definition does not include federal law officers.
 {¶ 13} Because defendant provided only an "excerpt" of the suppression hearing for our review, we have a limited record before us. An appellate court will indulge all reasonable presumptions which are consistent with the record in favor of finding regularity on the part of the trial court. State v. Grant (1993), 67 Ohio St.3d 465, 484. In the portion of transcript available to us, the agent stated that he had approached a common pleas judge for a search warrant, as he had in the past. There is evidence that the warrant itself, moreover, specified the local police along with the federal agent and other officers were present when the warrant was served. The partial record before us does not indicate, however, whether the agent was accompanied by a Cleveland police officer or a prosecutor when he gave his affidavit to the judge.
 {¶ 14} Because the record provided by defendant includes only the defendant's cross-examination, not the state's direct, we must presume that the state elicited adequate information to support a proper means of obtaining the search warrant. When a reviewing court does not have the transcript of the proceedings being appealed, it must presume regularity on the part of the trial court. State v. Zahoransky, Cuyahoga App. No. 80575, 2003-Ohio-148.
 {¶ 15} Defendant next argues that a federal agent is not authorized to execute a state search warrant. Crim.R. 41(C) states in pertinent part: "The warrant shall be directed to a law enforcement officer." As noted above, a federal agent is not included under the definition of a law enforcement officer in the criminal rules. If the agent had acted alone, defendant's argument would have some merit. The agent's testimony, however, clearly shows that he was accompanied by numerous local police officers, who are authorized by Crim.R. 41(A) to execute a search warrant. Further, the warrant was addressed to the Cleveland police as well as the federal agent. Similarly, the warrant for the Bedford Heights address was addressed to both the Bedford Heights police and the DEA agent. Federal and state officers often work in conjunction in criminal cases and their cooperating in the execution of a search warrant is acceptable provided they are searching for the same contraband. State v. Madison (Nov. 9, 1982), Franklin App. No. 81AP-894, 1982 Ohio App. LEXIS 12436, at *10-11. See, also, State v. Siegrist
(Sept. 28, 1984), Lake App. No. 10-088, 1984 Ohio App. LEXIS 10955 (upholding warrant allegedly requested by DEA agent but executed by local police); State v. Miller (Jan. 22, 1986), Summit App. No. 12198, 1986 Ohio App. LEXIS 5412 (stating that if officers from the jurisdiction where search took place are present the presence of unauthorized officers is immaterial); State v. Ridgeway, Washington App. No. 00CA19, 2001-Ohio-2655 (stating that DEA agent could participate in search on local warrant.)
 {¶ 16} Only when the question raised concerning the warrant is of constitutional magnitude should the evidence produced be suppressed. If the error in the search warrant is not constitutional in nature, it is non-fundamental. Non-fundamental errors require suppression for violations of Crim.R. 41 only if but for the error the search (1) would not have occurred or would not have occurred as abrasively, or (2) there was deliberate or intentional disregard of a requirement in the rule.State v. Wilmoth (1986), 22 Ohio St.3d 251, 263; State v. Morse, Warren App. Nos. CA2001-11-099, CA2001-11-100, 2002-Ohio-3873.
 {¶ 17} In the case at bar, the search warrant was executed by local police with the federal agent accompanying them. Even if the court's naming of the agent and the DEA on the warrant was an error, it certainly was not an error of constitutional proportions. The search would have occurred in the same manner if those parties had not been named on it, because the local police were also named. Additionally, there is no evidence of deliberate or intentional disregard for the provisions of the rule.
 {¶ 18} The trial court did not err in upholding the validity of the search warrant. The first assignment of error is overruled.
 {¶ 19} For his second assignment of error, defendant states:
II. The Trial Court Committed Reversible Error When It Failed To Grant Defendant-appellant's Motion To Suppress As To The Search Warrant And Seizure At 1929 Green Road, Apartment 303, Cleveland, Ohio.
 {¶ 20} Defendant argues that the DEA agent's affidavit did not contain enough information to provide probable cause for the judge to issue warrants for either the Green Road or the Bedford Heights apartments. Even before it reaches the issue of probable cause, a reviewing court must address defendant's standing to move for suppression.
 {¶ 21} A person must have a subjective expectation of privacy in a property or place which is the subject of a search warrant before he can challenge the legality of the search. Guest v. Leis (2001), 255 F.3d 325,333, citing Minnesota v. Olson (1990), 495 U.S. 91, 95-96. Merely asserting a proprietary interest in the apartment, without further evidence, is not sufficient to prove a privacy interest in it. Further, the burden of proving a right to a subjective expectation of privacy in a premises is on the person claiming the right. State v. Davis (1992),80 Ohio App.3d 277, 284.
 {¶ 22} Defendant failed to show that he had any right to an expectation of privacy in either apartment. His name was not on either lease, and nothing in the record shows that he had any privacy rights in connection to the Green Road address. Without more, this court cannot conclude that defendant has standing to object to the search of the Green Road residence.
 {¶ 23} Even if defendant had proven a privacy interest in either apartment, he has failed to show that the judge lacked probable cause to issue the warrant. "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (Illinois v. Gates [1983], 462 U.S. 213, 238-239, followed.)" State v.George (1989), 45 Ohio St.3d 325, syllabus paragraph one.
 {¶ 24} The DEA agent's affidavit in support of the search warrants stated that his confidential informant had personally seen defendant supply another dealer with heroin. This information showed the basis of his knowledge. The affidavit also confirmed the reliability of the informant. Further, the agent himself had seen defendant and Moore enter and then shortly thereafter leave the Green Road address just before the agent bought heroin from Moore. The affidavit also stated that although Moore rented the Green Road apartment, she actually lived in Shaker Heights. Drug dealers often use an apartment rented in a woman's name as a front for their drug operation, according to the affidavit. The affidavit provided, therefore, sufficient probable cause to issue a search warrant for the Green Road address.
 {¶ 25} There is also sufficient probable cause for the search of the Bedford Heights address. The DEA agent stated that because he "is familiar with the methods of operation often used by individuals engaged in the trafficking of controlled substances," he believed that heroin and other substances would be found at the apartment he considered defendant's primary residence. At the suppression hearing, the agent testified that he had been informed that defendant carried heroin with him. He could not say, however, that he knew of excessive traffic in and out of the Bedford Heights address, nor could he point to any specific incidents which led him to believe that defendant was selling drugs from that apartment.
 {¶ 26} Nonetheless, when an appellate court is reviewing the probable cause in an affidavit supporting a search warrant, the appellate court should not substitute its judgment for that of the judge who issued the warrant. When reviewing a warrant, an appellate court "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." George, supra, at syllabus paragraph two. Further, the defendant has the burden of proving he has a privacy interest in the premises. In the record before us, he provided no evidence of any privacy interest in the Bedford Heights apartment.
 {¶ 27} Given the amount of experience the agent had with drug surveillance and arrests, his accurate surveillance of defendant, the reliability of his informant, his information about the associates of defendant, his observations of numerous other drug dealers who maintain a supply of drugs at home as well as in their "front" apartment, and his knowledge that defendant had heroin on him most of the time, we conclude there was probable cause to issue a search warrant for the Bedford Heights address. Even if the judge had erred in her belief that probable cause existed, defendant failed to show a privacy interest in the premises and therefore lacked standing to challenge the search warrant.
 {¶ 28} The trial court did not err, therefore, in denying defendant's motion to suppress the warrants. The second assignment of error is overruled.
 {¶ 29} For his third assignment of error, defendant states:
III. The Trial Court Committed Reversible Error When It Failed To Grant Defendant Appellant's Motion To Suppress As To The Drugs Seized During The Vehicle Stop.
 {¶ 30} Defendant argues that because the agent and police did not have probable cause to stop his car as he was leaving the parking lot of the Green Road apartment, any drugs found in his car were the result of an illegal search and seizure. If the police had stopped him with the intention of searching the car or investigating illegal behavior occurring in the car, defendant would be correct. When justifying an intrusion, the police officer stopping the suspect must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terryv. Ohio, (1968) 392 U.S. 1, 21. "The United States Supreme Court has created three categories of police-citizen contact to identify the separate situations where constitutional guarantees are implicated: (1) consensual encounters, (2) investigative or `Terry' stops, and (3) arrests." State v. Casey, Ross App. No. 01CA2634, 2002-Ohio-3210, _ 24. See also, State v. Delraye, Cuyahoga App. No. 79894, 2002-Ohio-3542;State v. Robinson, Cuyahoga App. No. 79766, 2002-Ohio-2144.
 {¶ 31} In the case at bar, the police stopped defendant only to request the key to the apartment they were about to search. The police do not need probable cause to initiate a consensual encounter without probable cause or a suspicion of criminal activity. State v. Mendenhall, (1980), 446 U.S. 544, 556. If the police approach the person in a public place and only talk with him and ask for information, the encounter is consensual provided the person is free to walk away. See Mendenhall,446 U.S. at 554; State v. Jones (1996), 112 Ohio App.3d 206, 678 N.E.2d 285;State v. Miller (2002), Ohio App.3d 103; State v. Bussey (Dec. 2, 1999), Cuyahoga App. No. 75301, 1999 Ohio App. LEXIS 5707; State v. Casey, Ross App. No. 01CA2634, 2002-Ohio-3210, 25.
 {¶ 32} Nothing in the record indicates that defendant was not free to walk or drive away. On the contrary, the agent's testimony at the suppression hearing shows that this stop was a consensual one. Defendant did not know that the agent and other officers were the police until they told him. As soon as he discovered that they were the police, he began fighting with them, even though there was no indication the police were asking for anything more than the key. He was then arrested for fighting with the police, not for any drug-related offense.
 {¶ 33} The search of defendant's car was a standard inventory pursuant to his arrest, not a search for drugs. Inventories of impounded vehicles are an exception to the warrant requirement of the Fourth Amendment because they are administrative rather than investigatory in nature. State v. Cook (2001), 143 Ohio App.3d 386, 389. The inventory which produced the drugs in defendant's car, therefore, was not a violation of his Fourth Amendment rights. The trial court did not err, therefore, in denying defendant's motion to suppress the drugs seized during the vehicle stop. The third assignment of error is overruled.
 {¶ 34} For his fourth assignment of error, defendant states:
IV. The Trial Court Committed Reversible Error When It Failed To Take Judicial Notice Of The Presentence Investigation Report Which The Court Had Ordered Prepared [sic] For This Case.
 {¶ 35} Defendant claims that his counsel reviewed a presentence investigation report which contained information that contradicted the testimony of the agent concerning whether or not the agent had received a tip the morning of defendant's arrest that defendant would be at the Green Road address and would be carrying heroin. Defendant argues that the court's failure to admit this report, because the court said that it was hearsay, was prejudicial to defendant because it would have impeached the agent.
 {¶ 36} The admission and exclusion of evidence is within the discretion of the trial court. State v. Bey (1999), 85 Ohio St.3d 487,490. Defendant was trying to introduce the written statement of a probation officer who never spoke to the agent or the informant to determine the truth of the alleged statement. The probation officer was not available for examination, and the agent denied ever saying that he had received a tip that morning.
 {¶ 37} Although a court may rely on a presentence investigation at a sentencing, probation, or sex offender hearing, the hearsay contained in the report does not comply with the rules of evidence, which rules apply to a trial. State v. Cook (1998) 83 Ohio St.3d 404, 425. "Presentence investigation reports for trials other than of aggravated murder, as provided for under R.C. 2947.06 and Crim. R. 32.2, are confidential, and utilized only by the trial court unless in the court's discretion such report is furnished to the defendant, or his counsel, and to the prosecuting attorney. Ordinarily, such reports may contain unsworn and hearsay information as they do not perform any evidentiary function."State v. Glenn (1986), 28 Ohio St.3d 451, 459. Defense counsel's attempt to use the presentence investigation report as evidence at the suppression hearing was a misuse of the report.
 {¶ 38} The trial court did not err in refusing to take judicial notice of the presentence investigation report. Accordingly, the fourth assignment of error is overruled.
Affirmed.
JAMES J. SWEENEY, P.J., AND COLLEEN CONWAY COONEY, J., CONCUR.
[1] City of Euclid Police Department
[2] The DEA agent testified that defendant is a boxer. Tr. at 51.