**CITY OF ROCKY RIVER, Appellee,**

v.

**SALEH, Appellant.**

[Cite as *Rocky River v. Saleh* (2000), 139 Ohio App.3d 313.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77004.

Decided Sept. 18, 2000.

314

316

*Gary A. Hotz,* for appellee.

*Jerome Emoff,* for appellant.

JAMES M. PORTER, Judge.

Defendant-appellant Musa Saleh appeals from his convictions following a bench trial in Rocky River Municipal Court for driving while his license was under suspension and carrying a lock knife in violation of Rocky River Codified Ordinance Nos. 335.04, 335.06, and 549.11, respectively. Defendant contends that the trial court erred in not suppressing defendant's oral statement following a traffic stop, in admitting evidence from the Bureau of Motor Vehicles, and in not acquitting the defendant because of insufficient evidence. Defendant also contends that the Rocky River ordinance regarding weapons is unconstitutional, the inventory search of the vehicle violated his constitutional rights, and the convictions were against the manifest weight of the evidence. We find no error and affirm.

Defendant was arrested following a traffic stop on March 11, 1999, in Rocky River by Officer George J. Lichman. Officer Lichman ran the license plate of defendant's vehicle through his mobile data terminal and discovered that the registered owner of the vehicle, Musa Saleh, had no driving privileges. The terminal also provided Officer Lichman with the name, date of birth, height, weight, and hair and eye color of the registered owner. Even though Office Lichman did not know the identity of the driver prior to the stop, the driver matched the physical characteristics of Musa Saleh. Based upon this information, Officer Lichman determined that the driver was also the registered owner. He then stopped the vehicle. When Officer Lichman approached and explained why the vehicle was stopped, the driver acknowledged that he was Musa Saleh

and that he was aware that he had no driving privileges. Right around that time, Officer Kimberly Forkins arrived as backup. Officer Lichman then patted defendant down for weapons and he was placed in the back of the police vehicle.

An inventory of defendant's vehicle was commenced by Officer Forkins because it was going to be towed. Officer Lichman testified that Rocky River had a police department policy on the inventorying of vehicles that are impounded. Officer Lichman also identified Rocky River Codified Ordinance 303.08, which provides for the impoundment of a vehicle when the driver of the vehicle is operating it without a lawful license or while his license is suspended.

During the inventory search, Officer Forkins discovered a "lock-back knife" with a five or five-and-one-half inch blade concealed in "the little pocket attached to the rear of the passenger front seat." Defendant was then arrested, read his *Miranda* rights, and charged with driving under suspension and possession of a prohibited weapon. Later, when defendant was being processed after his arrest, an Illinois driver's license was found in his wallet, which carried the name of Yousef Alrafati.

On August 2, 1999, defendant filed a motion to suppress all evidence and oral statements, asserting that the initial traffic stop was without probable cause and the inventory search of defendant's vehicle was unlawful. On that same day, defendant also filed a motion to dismiss, arguing that Rocky River Codified Ordinance 549.11 violates substantive due process by criminalizing innocent activity.

A suppression hearing on the motion to suppress was conducted on August 3, 1999, during which Officer Lichman, Officer Forkins, and Detective Sergeant Carl Gulas testified. Subsequently, on September 7, 1999, immediately before defendant's trial was to commence, the trial court announced its decision overruling defendant's motion to suppress. The trial court read into the trial record its findings that there was sufficient probable cause to justify the stop of defendant's vehicle and that the inventory search of the vehicle was lawful. The court further found that no custodial interrogation occurred in this case requiring *Miranda* warnings, and, therefore, the statements made by defendant at the time of the stop should not be suppressed. The trial court then denied defendant's motion to dismiss the weapons charge.

At trial, Officer Lichman testified and reiterated his testimony given at the suppression hearing. The parties then stipulated to the nature of Officer Forkins's testimony and the state rested and moved for the admission of its exhibits. The defense objected to the admission of the knife and other BMV documents. These objections were overruled. The defense then requested an acquittal under Crim.R. 29, asserting that there was insufficient evidence to support a conviction in this case. The trial court denied this motion with respect

to the knife and the driving-under-suspension charges and granted it with respect to the identification card. The trial court subsequently found defendant guilty of driving under suspension (R.C. 4507.02) and possession of a prohibited weapon (Rocky River Codified Ordinance 549.11). This timely appeal follows.

We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.

"I. The trial court erred in denying appellant's motion to suppress oral statements."

In his first assignment of error, defendant asserts that the initial stop and questioning by Officer Lichman constituted a Fourth Amendment seizure. He further asserts that his statements regarding his identity and the status of his driving privileges were made prior to receiving his *Miranda* warnings; therefore, the statements should have been suppressed and the trial court erred in denying his motion to suppress these statements.

The scope of our review on a motion to suppress was recently set forth by this court in *State v. Faia* (July 23, 1998), Cuyahoga App. No. 73074, unreported, 1998 WL 413774, as follows:

"In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Smith* (1991), 61 Ohio St.3d 284, 574 N.E.2d 510; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143. Accepting those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard. See, also, *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498, 502–503."

The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. Pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 471–472, 86 S.Ct. 1602, 1626–1627, 16 L.Ed.2d 694, 722, an individual must be advised of his or her constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Any statement given under custodial police interrogation, without the Miranda warnings first being given, may later be excluded from use by the state in any resulting criminal prosecution. *Id.* at 476, 86 S.Ct. at 1629, 16 L.Ed.2d at 724–725.

■ ■ It is well established that *Miranda* warnings must be given only where the individual being questioned is in custody, in other words, only where questions are posed as part of a "custodial interrogation." *California v. Beheler* (1983), 463 U.S. 1121, 1124, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275, 1278–1279. When determining whether an individual is in custody for purposes of *Miranda,* it must be determined whether there was either a formal arrest or a restraint of the individual's freedom of movement commensurate with that of a formal arrest. *Id.* at 1125, 103 S.Ct. at 3520, 77 L.Ed.2d at 1279–1280. The United States Supreme Court has held that individuals who are temporarily detained pursuant to roadside traffic stops are not "in custody" for *Miranda* purposes. *Berkemer v. McCarty* (1984), 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334–335.

In *Fairview Park v. Hejnal* (Jan. 19, 1995), Cuyahoga App. No. 67506, unreported, 1995 WL 23148, this court, following *Berkemer,* recognized that *Miranda* warnings are not required prior to mere roadside questioning after a routine traffic stop. In *Hejnal,* we stated:

"In *Berkemer v. McCarty* (1984), 468 U.S. 420 [104 S.Ct. 3138, 82 L.Ed.2d 317], the United States Supreme Court ruled that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for the purposes of the *Miranda* rule. See, *Ohio v. Sendak* (June 21, 1989), Mahoning App. No. 88 C.A. 160, unreported. The Berkemer court noted that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights. *Berkemer* at 421 [104 S.Ct. at 3140–3141, 82 L.Ed.2d at 322–323]. The Court stated that '* * * the atmosphere surrounding an ordinary traffic stop is substantially less police dominated than surrounding kinds of interrogation at issue in *Miranda* itself * * *.' *Id.* at 438–439 [104 S.Ct. at 3149, 82 L.Ed.2d at 334]. '* * * the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.' *Id.* at paragraph two of the syllabus."

■ In the instant case, we find that the trial court correctly concluded that this interaction between Officer Lichman and defendant did not amount to a custodial interrogation, and, therefore, no *Miranda* warnings were required at that time. Officer Lichman testified at the suppression hearing that after he stopped defendant's vehicle, he approached the vehicle and told defendant that the reason why he stopped him was that a computer check of his license plates indicated that he had no driving privileges. Officer Lichman further testified that defendant then "acknowledged that he was Musa Saleh and that he in fact had no driving privileges and he was aware of that." In fact, at the time of

defendant's statements, Officer Lichman had not even asked him a question. There was no custodial interrogation in this case.

■ We further find that the *Miranda* rule does not apply to defendant's voluntary statements given prior to any questioning by Officer Lichman. In *Miranda, supra,* at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726, the court stated:

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

The Ohio Supreme Court has similarly held that an individual is not subject to custodial interrogation and is not entitled to *Miranda* warnings when he or she initiated the discussion with the police, volunteered the information, and there is no evidence that the officer asked any questions during the statement. *State v. McGuire* (1997), 80 Ohio St.3d 390, 401, 686 N.E.2d 1112, 1121–1122, citing *State v. Roe* (1989), 41 Ohio St.3d 18, 22, 535 N.E.2d 1351, 1358.

We find that defendant's statements made to Officer Lichman after this roadside traffic stop were made voluntarily and outside of "custodial interrogation." Accordingly, the trial court properly overruled defendant's motion to suppress.

Assignment of Error I is overruled.

"II. The Rocky River ordinance prohibiting the carrying of certain weapons is unconstitutional."

In his second assignment of error, defendant asserts that Rocky River Codified Ordinance 549.11 is unreasonable and unconstitutional as it "criminalizes inherently innocent, harmless, and useful conduct." Defendant asserts that, even though this ordinance is designed to protect the public from the violent use of knives, its prohibition against innocent activity has no rational connection to protecting the public.

Rocky River Codified Ordinance 549.11 states:

"(A) No person shall carry on or about his person any weapon known or designated as brass knuckles, billy, slingshot, sandbag, blackjack, stun guns, throwing stars, numbchucks [*sic*], electric shock gun, or other weapon of similar character, or any knife fitted with a mechanical devise for automatic release of the blade, opening the knife and locking the knife in the open position, commonly known as a switch or automatic spring knife, or any knife having a blade two and one-half (2–1/2) inches in length or longer, or any straight edge razor.

"(B) This Section does not apply to any such weapons designated for use by officers of the law, or when a person is engaged in lawful business or pursuit justifying possession of such weapon.

"(C) Whoever violates this Section is guilty of misdemeanor of the first degree. (Ord. 38–91. Passed 6–10–91.)"

In challenging the constitutionality of this ordinance, defendant relies on *Akron v. Rasdan* (1995), 105 Ohio App.3d 164, 663 N.E.2d 947. In *Rasdan*, the court struck down a similar ordinance that provided that "[n]o person shall carry on or about his person * * * a knife having a blade two and one-half inches in length or longer." *Id.* at 170, 663 N.E.2d at 951. The court concluded that, because the *Rasdan* ordinance provided for just one exception "when a person is 'engaged in a lawful business, calling employment, or occupation' and the circumstances justify 'a prudent man in possessing such a weapon for the defense of his person or family,'" it failed to provide sufficient exceptions for "inherently innocent, harmless, and useful" conduct and instead criminalized "an unreasonable amount of innocent activity." *Id.* at 173–174, 663 N.E.2d at 953–954. Therefore, the court held that the scope of the ordinance was unreasonable. *Id.* at 174–175, 663 N.E.2d at 953–954.

In another nearly identical case, the court in *State v. Corcelli* (June 9, 1999), Summit App. No. 19297, unreported, 1999 WL 372560, was recently faced with the same constitutional challenge to the very similar Cuyahoga Falls Codified Ordinance 549.10, which provided that "[n]o person shall carry a * * * knife having a blade two and one-half inches in length or longer * * * on or about the person without proper justification." "Proper justification" included "the right of law enforcement officers and other persons specifically authorized by law to be armed within the scope of his duties." The ordinance further stated that "[i]t shall be an affirmative defense to a violation of this section, if it appears that the defendant was at the time engaged in a lawful business, employment or occupation, or that the circumstances in which he was placed justified a prudent man to possess such weapon for the defense of his person, property or family." The defendant in *Corcelli* also relied on *Rasdan* in support of his assertion that this ordinance was unconstitutional. However, the Ninth District upheld the ordinance, holding:

"The ordinance involved in the instant case, however, is distinguishable from the *Rasdan* ordinance in that it provides an exception for individuals carrying a knife with a blade of two and one-half inches or longer if that individual possesses proper justification. Unlike the *Rasdan* ordinance, what Cuyahoga Falls Codified Ordinance 549.10 prohibits is not all possession of knives with blades two and one-half inches or longer, but only possession of such knives without proper justification. Accordingly, the ordinance does not impose criminal liability for an

unreasonable amount of innocent behavior and Corcelli's reasoning is not well taken.

"Corcelli's argument that the ordinance fails to have a rational basis also fails. This Court has previously explained that '[u]nder the rational basis test, a statutory prohibition is constitutionally valid if it bears a real and substantial relationship to the public's health, safety, morals, or general welfare and is not unreasonable or arbitrary.' (Emphasis *sic.*) *Rasdan, supra,* at 173, 663 N.E.2d at 953. As in *Rasdan,* the ultimate objective of the ordinance at issue herein 'is to protect the public from the violent use of knives.' *Id.* Corcelli does not present an argument to the contrary; in fact, he does not present any argument on this issue other that stating that the ordinance 'fails to protect the public by rational connection from violent activity using knives.' Given the rational basis behind the ordinance and its exception for innocent activity, this Court rejects Corcelli's first assignment of error."

■ In the instant case, the ordinance at issue provides an exception for individuals carrying a knife with a blade of two and one-half inches or longer if that individual "is engaged in lawful business or pursuit justifying possession of such weapon." This exception is similar to that in the *Corcelli* ordinance as both provide for the justified use of an otherwise prohibited weapon. Accordingly, we find, like the court in *Corcelli,* that Rocky River Codified Ordinance 549.11 is distinguishable from the Rasdan ordinance in that it provides an exception for individuals with justified possession, and, therefore, it does not impose criminal liability for an unreasonable amount of "innocent, harmless, and useful conduct."

■ We further find, like the court in *Corcelli,* that under the rational basis test, Rocky River Codified Ordinance 549.11 bears a real and substantial relationship to its legitimate objective "to protect the public from the violent use of knives." Thus, this ordinance is constitutionally valid.

Assignment of Error II is overruled.

"III. The admission in evidence of the Bureau of Motor Vehicles documentation constituted prejudicial error and an abuse of discretion."

In his third assignment of error, defendant asserts that the trial court abused its discretion in admitting a copy of his driving record from the Bureau of Motor Vehicles. Defendant asserts that this document was inadmissible hearsay that did not fall within one of the recognized exceptions to the hearsay rule contained in Evid.R. 803. Defendant further asserts that this record was not properly authenticated.

■ It is well established that the admission or exclusion of evidence lies within the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173,

31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Furthermore, rulings on the admission of evidence and the overall conduct of a trial are within the discretion of the court and will not be overturned absent an abuse of that discretion. *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 181–182, 372 N.E.2d 804, 808–809. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

██ Under Evid.R. 801(C), "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is not admissible under Evid.R. 802. However, Evid.R. 803(8) provides an exception to the hearsay rule that allows the admission of official records, although they may constitute hearsay, if they consist of facts recorded by public officials pursuant to a duty imposed by law. In order for statements contained in an official report to be admissible, the person furnishing and recording the information must be under an official duty to do so. *State v. York* (1996), 115 Ohio App.3d 245, 685 N.E.2d 261.

██ The transcript reflects that the prosecution produced a certified copy of defendant's driving record as maintained by the Bureau of Motor Vehicles. The BMV report was accompanied by the affidavit of Franklin R. Caltrider, the Registrar of the Bureau of Motor Vehicles. Even if this report falls within the hearsay exception, it must still satisfy the independent requirement that it be authenticated.

Defendant asserts that his BMV report was inadmissible, as it was not properly authenticated under Evid.R. 901 and Evid.R. 902. Defendant specifically challenges the veracity of Caltrider's affidavit. However, defendant has failed to include the challenged affidavit in the appellate record for our review and we must presume regularity in the proceedings below. Because we must presume that defendant's driving record report was an authentic record by public officials within the scope of their duty, we find that this record constitutes a public record or report under the hearsay exception of Evid.R. 803(8). Therefore, we cannot find that the trial court abused its discretion in admitting the BMV report.

Assignment of Error III is overruled.

"IV. The evidence was insufficient to sustain a conviction as a matter of law.

"V. Appellant's convictions are against the manifest weight of the evidence."

The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the

Supreme Court of Ohio as follows in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, 546–547:

"The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.

"With respect to sufficiency of the evidence, ' "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

"Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388–389, 124 N.E.2d at 149. Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) *Black's supra,* at 1594.

"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction')."

Pursuant to R.C. 4507.02(B), no person, whose driver's license has been suspended, shall operate a motor vehicle within this state during the period of the suspension. Furthermore, Rocky River Codified Ordinance 549.11(A) provides that no person shall carry on or about his person any knife having a blade two and one-half inches in length or longer unless that person "is engaged in lawful business or pursuit justifying possession of such weapon."

The record reflects that Officer Lichman testified at trial that he stopped defendant's vehicle after a license plate check revealed that the registered owner of the vehicle, Musa Saleh, had a suspended license and the driver matched the owner's physical description. Officer Lichman testified that when he approached the vehicle after pulling it over, defendant acknowledged that he was Musa Saleh and that he was aware that he had no driving privileges. Defendant was then patted down for weapons and placed in the back of the police vehicle. An inventory search of defendant's vehicle was commenced, during which a "lock-back knife" with a five to five and one-half inch blade was discovered in the pocket behind the front passenger side seat. Defendant's only explanation for possessing this knife was that he used it in his employment at a deli. At trial, the prosecution produced the BMV report of defendant's driving record and the knife found in the vehicle.

Based on this evidence, we find that there was sufficient evidence to find beyond a reasonable doubt that defendant operated his motor vehicle while his driver's license was under suspension. There was also sufficient evidence to find beyond a reasonable doubt that defendant possessed a "lock-back knife" with a blade that exceeded two and one-half inches in length without justification. We also find that the jury did not clearly lose its way and his convictions did not create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, there was sufficient evidence to support defendant's convictions and his convictions were not against the manifest weight of the evidence.

Assignments of Error IV and V are overruled.

"VI. The traffic stop of appellant's vehicle and subsequent inventory search violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution."

In his final assignment of error, defendant asserts that Officer Lichman's computer search of his license plate number constituted an unreasonable search, and, therefore, the subsequent stop of his vehicle was not sufficiently justified. We disagree.

 Under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, where a police officer has a reasonable and articulable suspicion of criminal activity, the officer may make a brief investigatory stop. To justify a stop under *Terry*, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *State v. Williams* (1990), 51 Ohio St.3d 58, 554 N.E.2d 108.

 It is well established that a police officer does not need to possess specific facts warranting suspicion of criminal behavior to run a license plate check on a vehicle traveling the public roadway. *State v. Owens* (1991), 75 Ohio App.3d 523, 525, 599 N.E.2d 859, 860; *State v. Moss* (Feb. 16, 2000), Summit App. No. 19698, unreported, 2000 WL 202103; *State v. Pennington* (July 17, 1998), Wood App. No. WD–97–122, unreported, 1998 WL 456597; *State v. Kent* (June 18, 1998), Cuyahoga App. No. 72435, unreported, 1998 WL 323558.

"While random stops of vehicles without any reasonable suspicion of criminal activity may be constitutionally invalid, random computer checks of vehicle license plates are not. One does not have any expectation of privacy in a license plate number which is required to be openly displayed on his vehicle. R.C. 4503.21. Moreover, a scan of a computer data bank, in order to obtain information relevant to the license number, involves no intrusion. Such a 'search' does not interrupt a driver in his travel, nor restrain his person or detain him. In sum, it does not even constitute a 'stop[.]' * * *" *Moss, supra,* quoting *State v. Bates* (Aug. 12, 1987), Medina App. Nos. 1576, 1577, unreported, 1987 WL 15817.

Furthermore, this court has also recognized that it is reasonable to infer that an automobile's owner is actually driving the automobile at the time of the license plate check. *Kent, supra,* citing *State v. Epling* (1995), 105 Ohio App.3d 663, 665, 664 N.E.2d 1299, 1300.

 In the instant case, the computer check of defendant's license plates revealed that the owner of the vehicle had a suspended driver's license. The mobile data terminal also provided Officer Lichman with the physical characteristics of the registered owner, Musa Saleh. As stated above, it was reasonable for Officer Lichman to infer that the driver of the vehicle was the owner. In addition, Officer Lichman observed that the driver of the vehicle matched the physical characteristics of the registered owner with the suspended license. Accordingly, we find that Officer Lichman had a reasonable suspicion that defendant was committing a traffic offense, and, therefore, the officer was justified in conducting an investigatory stop of the vehicle.

Assignment of Error VI is overruled.

*Judgment affirmed.*

James D. Sweeney, P.J., and Blackmon, J., concur.