OPINION
{¶ 1} Defendant-appellant, Lana D. Williams ("appellant"), appeals from the November 1, 2001 judgment entries of the Franklin County Court of Common Pleas finding her guilty of attempted aggravated murder, aggravated murder with specification, and aggravated arson. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On October 5, 2001, jury selection began in the trial against appellant. On October 15, 2001, the jurors were sworn in and the trial commenced. The trial lasted approximately three days. Appellant, in testifying in her own defense, confessed to setting Trishella McDaniel ("McDaniel") on fire and accepted full responsibility for her actions.
 {¶ 3} Appellant testified that on March 8, 2000, she was at the home of Gary Watters ("Watters") drinking alcohol and smoking crack cocaine. (Tr. 536-537.) Appellant testified that she had not slept, and "had been smoking crack and drinking for three days straight." (Tr. 531.) Appellant testified that McDaniel entered Watters' home, staggering, slurring her words, and asking if anyone in the house had any crack. Watters told McDaniel that he did not have any crack, but that he needed some groceries. McDaniel had a food stamp card in her possession. Appellant testified:
 {¶ 4} "* * * [W]e [appellant, Watters, and McDaniel] came up with the idea * * * if we go to the Big Bear and get food off the food card and if I take it to my aunt's and show her that we have food for the house where I have been at for three days and for [Watters], she'll give us some crack cocaine because she had some." (Tr. 538-539.) Appellant, Watters, and McDaniel left the house. Watters drove McDaniel's car to the Big Bear on Demorest and Sullivant Avenues.
 {¶ 5} As the occupants of the car approached the Big Bear parking lot, McDaniel's car ran out of gas. McDaniel gave Watters one dollar to get some gas. Appellant handed Watters a gas can that was in the back seat of the car. Watters left to get some gas, and appellant and McDaniel entered the grocery store. Appellant described the following turn of events:
 {¶ 6} "* * * [A]fter walking all through the store * * * I still was getting things in the little basket, we walked on over toward the counter * * * and there was a man in front of us and he was paying for his things. And as I'm pulling the things out of the basket and putting them onto the belt, it started, just as he was finished paying for his things and she started yelling stuff to herself and she said, fuck this, and started walking out.
 {¶ 7} "So I stood there for a minute and then looking around and I just left. I left the things. I just left and walked and went out behind her. For some reason she walked towards the side of the Big Bear wall and stood against the wall. And I walked over to her and I said, what's wrong? What's wrong?
 {¶ 8} "And she said, fuck you, get away from me, get away from me. And I just kept saying, what's wrong? You got us all the way out here.
 {¶ 9} "She kept saying, get way from me, fuck you, and she started wiggling. She was wiggling her legs real fast.
 {¶ 10} "And I said Trish, what is wrong with you?
 {¶ 11} "And she said, I got to pee, Goddamn it.
 {¶ 12} "I said, there is a bathroom in Big Bear. And I went to grab her to pull her in Big Bear. My thinking, if I get her back in Big Bear to use the bathroom, we can still get this food so we can get some crack. As I grabbed her to pull her back in the store, they thought I was hitting her and she hit me, and I hit her back and we started fighting." (Tr. 543-545.)
 {¶ 13} Appellant testified that after she fought for a while she got tired, and she wanted to stop. Appellant stated that McDaniel was on the ground and had a hold of appellant's shirt. Appellant pulled away from McDaniel's grip and walked away. Appellant stated that as she started to walk towards the car, McDaniel ran up behind appellant and started "swinging" at appellant. (Tr. 546-547.) Appellant yelled for Watters' assistance. Appellant testified that Watters came over and said something to McDaniel. McDaniel told Watters to get away from her. Watters walked off, and McDaniel approached appellant and hit her in the head. Appellant testified:
 {¶ 14} "* * * [T]hat's when I just went ballistic and —
 {¶ 15} "* * *
 {¶ 16} "* * * I grabbed the first thing that was in front of me and that was the gas can.
 {¶ 17} "* * * I just grabbed it.
 {¶ 18} "* * *
 {¶ 19} "I just went ballistic. I just started slinging and swinging." (Tr. 547-548.)
 {¶ 20} Appellant testified that she believed that gas was coming out of the can. Appellant got a lighter and lit McDaniel on fire. Appellant testified that she did not want to set McDaniel on fire, that she just wanted to get some crack. (Tr. 548.) Appellant testified that she was not trying to make excuses for her conduct, and that what she did was wrong, and she accepted full responsibility. (Tr. 549, 571.)
 {¶ 21} Witnesses to the incident assisted McDaniel by attempting to put the fire out with a blanket and by throwing a gallon of milk on McDaniel. Several witnesses testified to hearing appellant admit to lighting McDaniel on fire because McDaniel deserved it because she and appellant had been fighting all day.
 {¶ 22} McDaniel suffered second and third degree burns from her waist up, and severe injury to her mouth, tongue, throat and her lungs. McDaniel was admitted to The Ohio State University Hospital on the evening of March 8, 2000.
 {¶ 23} On March 16, 2000, appellant was indicted on count one of attempted aggravated murder for having purposely attempted to cause the death of McDaniel with prior calculation and design, on count two of attempted aggravated murder for having purposely attempted to cause the death of McDaniel while committing aggravated arson, and count three of aggravated arson (case No. 00CR-03-1593).
 {¶ 24} On June 24, 2000, McDaniel died from "thermal injuries to her head, neck, torso and extremities." (Tr. 316.) On June 28, 2000, appellant was indicted on count one of the indictment of aggravated murder with specification for purposely causing McDaniel's death with prior calculation and design, count two of aggravated murder with specification for purposely causing McDaniel's death while committing aggravated arson, and count three of aggravated arson (case No. 00CR-06-3862).
 {¶ 25} On October 22, 2001, the jury returned guilty verdicts in case No. 00CR-03-1593 on count two of attempted aggravated murder, and count three of aggravated arson. The jury found appellant not guilty on count one of attempted aggravated murder for having purposely attempted to cause the death of McDaniel with prior calculation and design. In case No. 00CR-06-3862, the jury returned guilty verdicts on count two of aggravated murder with specification, and on count three of aggravated arson. The jury found appellant not guilty of count one of aggravated murder with specification for purposely causing McDaniel's death with prior calculation and design. On October 29, 2001, the trial court merged counts two and three of the indictment in case No. 00CR-03-1593, with counts two and three in case No. 00CR-06-3862, and sentenced appellant to a concurrent life sentence without the possibility of parole for aggravated murder with specification, and 10 years incarceration for aggravated arson. It is from this entry that appellant appeals, assigning the following as error:
 {¶ 26} "The trial court erred to the prejudice of appellant by allowing impermissible cross-examination which led to the introduction of inadmissible character evidence."
 {¶ 27} In her sole assignment of error, appellant contends that the state's line of questioning concerning her specific instances of arguing or fighting prior to the March 8, 2000 incident was not permitted and was therefore highly prejudicial. Specifically, appellant contends that the trial court should have sustained defense counsel's objections at the onset of the state's line of questioning during cross-examination.
 {¶ 28} The trial court has the discretion to limit the scope of cross-examination. Berlinger v. Mt. Sinai Medical Ctr. (1990),68 Ohio App.3d 830, 838. "Cross-examination shall be permitted on all relevant matters and matters affecting credibility." Evid.R. 611(B). The trial court also retains wide latitude to impose reasonable limits on cross-examination based upon the concerns of harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall (1986),475 U.S. 673, 679, 106 S.Ct. 1431, 1435. As such, an appellate court should be slow to disturb a trial court's determination on the scope of cross-examination unless the trial court has abused its discretion and the party illustrates a material prejudice. Reinoehl v. Trinity Universal Ins. Co. (1998), 130 Ohio App.3d 186, 194. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 29} An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. Pembaur v. Leis (1982),1 Ohio St.3d 89; Wise v. Ohio Motor Vehicle Dealers Bd. (1995),106 Ohio App.3d 562, 565; and In re Ghali (1992), 83 Ohio App.3d 460,466.
 {¶ 30} The admission or exclusion of evidence lies within the trial court's sound discretion. Rocky River v. Saleh (2000),139 Ohio App.3d 313, 324. "[S]ustaining or overruling objections to testimonial evidence is the duty and province of the trial court." State v. Lauderdale (Oct. 22, 1984), Montgomery App. No. 83-CR-778.
 {¶ 31} In this case, defense counsel, on direct examination, put the subject of appellant's drug and alcohol addiction in issue. Appellant testified that she became addicted to crack cocaine at the age of 19, and that she was also addicted to heroin, alcohol, weed, and acid. (Tr. 531-532.) Appellant testified that she "lied to get it [crack cocaine], I stole to get it, cheated to get it, few times I even sold my body to get it." (Tr. 532.) As a result of her addictions, appellant testified that she was convicted of possession of crack cocaine, theft, and burglary.
 {¶ 32} Later, the state cross-examined appellant concerning her drug addiction, and within the course of the questioning elicited information regarding appellant's prior arguments with other people:
 {¶ 33} "Q. [by Mr. Mitchell] You have had arguments before?
 {¶ 34} "A. Yes, yes.
 {¶ 35} "Q. Ugly arguments, right?
 {¶ 36} "A. Not with Trish.
 {¶ 37} "Q. Just with people?
 {¶ 38} "MR. SHERMAN [Defense counsel]: I'm objecting. This is improper cross-examination.
 {¶ 39} "THE COURT: Overruled.
 {¶ 40} "MR SHERMAN: Thank you.
 {¶ 41} "THE COURT: Mr. Mitchell, your next question.
 {¶ 42} "BY MR. MITCHELL:
 {¶ 43} "Q. Your arguments don't end like this, do they?
 {¶ 44} "A. No.
 {¶ 45} "Q. Had you had arguments, verbal arguments, on any of these occasions when you have been on these two or three-day binges where you have been unable to sleep, have you had arguments during those or after those?
 {¶ 46} "MR. SHERMAN: Objection.
 {¶ 47} "THE COURT: Overruled. You may answer.
 {¶ 48} "* * *
 {¶ 49} "Q. Verbal arguments?
 {¶ 50} "A. Yes.
 {¶ 51} "Q. Did any of them end in anything like this?
 {¶ 52} "MR. SHERMAN: Your Honor, I still think this is improper. This is not according to the rules.
 {¶ 53} "THE COURT: I understand. Your objection is overruled.
 {¶ 54} "MR. SHERMAN: Thank you.
 {¶ 55} "THE COURT: You can have an ongoing line of objection to this line of questioning.
 {¶ 56} "MR. SHERMAN: Thank you.
 {¶ 57} "* * *
 {¶ 58} "Q. Would you say that any of these other arguments that you have had could have ended in the same result if there had been a can of gas?
 {¶ 59} "MR. SHERMAN: I'm going to object.
 {¶ 60} "* * *
 {¶ 61} "THE COURT: Objection is sustained.
 {¶ 62} "MR. SHERMAN: Ask for an instruction. In fact, I'm asking for a mistrial.
 {¶ 63} "THE COURT: The jury is ordered to disregard the question.
 {¶ 64} "* * *
 {¶ 65} [Side bar] "THE COURT: * * * The line of questioning that you were pursuing for the purpose of trying to determine what happened in this argument that motivated her to do what she did is appropriate. What she did in other arguments doesn't have any relevance to that issue, and it was for that reason that I was allowing the questions to be asked. It is irrelevant.
 {¶ 66} "What happened in this incident is relevant, and you may continue the question in that vein, but not in any other vein." (Tr. 574-575; 576-578.)
 {¶ 67} The trial court denied defense counsel's request for a mistrial and later instructed the jury that any statements or answers that the trial court instructed the jury to disregard were not to be treated as evidence.
 {¶ 68} While the trial court may not have immediately sustained defense counsel's objection and prohibited the state from pursuing this line of inquiry, the trial court did eventually sustain defense counsel's objections and instructed the jury to disregard the question. However, we cannot say that the trial court acted unreasonably because the state's cross-examination of appellant was not improper. Evid.R. 404(B) states in pertinent part that:
 {¶ 69} "Evidence of other crimes, wrongs, or acts * * * may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 70} Evid.R. 405(A) states:
 {¶ 71} "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."
 {¶ 72} The Ohio Supreme Court in State v. Kamel (1984),12 Ohio St.3d 306, 312, held that:
 {¶ 73} "* * * [I]t is our conclusion that it was the defense which first put the subject of [the defendant's] drug problem in issue in this case. After that point, it could not limit the subject to just those points of evidence[,] which were in its favor. Rather, the topic became open to all relevant inquiry in the discretion of the trial court."
 {¶ 74} Here, on direct examination, defense counsel elicited testimony from appellant about her years of addiction to drugs, specifically crack cocaine, and the effects it had on her. Appellant testified she had been using drugs since she was 12 years old, and that she became addicted to crack cocaine at the age of 19, and that the drug took control of her mental state, and made her crazy. (Tr. 531-532.) Defense counsel, in an attempt to lay the foundation for an intoxication defense, "opened the door" to appellant's lack of control as a result of being addicted to crack cocaine. After defense counsel "opened the door" by introducing evidence of appellant's drug addiction, the state was permitted to cross-examine appellant regarding relevant specific instances of her conduct. Evid.R. 405(A). On cross-examination, the state, in attempting to rebut appellant's defense of intoxication, explored appellant's history of being addicted to crack cocaine, and her propensity of violent use due to her addiction. These questions posed by the state to appellant were the proper subject of cross-examination under Evid.R. 405(A). Prejudicial error is not found where the defense opened the door to this testimony. See State v. Waver (Aug. 19, 1999), Cuyahoga App. No. 73976 (once the door is opened, it is not error for the other acts to be admitted. "The state did no more than walk through a door opened by the appellant.")
 {¶ 75} Moreover, we note that the potential for a prejudicial effect may have existed when the state, in its attempt to prove the element of prior calculation and design, asked appellant if any of her prior arguments ended in the same manner as her argument with McDaniel. However, we reach no such result here, as the jury returned not guilty verdicts on the element of prior calculation and design.
 {¶ 76} Finally, in light of appellant's confession, we are not persuaded that the trial court's allowing the challenged cross-examination of appellant rose to the level of an abuse of discretion and resulted in material prejudice warranting reversal. As such, appellant's sole assignment of error is not well-taken and is overruled.
 {¶ 77} Accordingly, appellant's assignment of error is overruled, and the judgments of the Franklin County Court of Common Pleas are affirmed.
Judgments affirmed.
PETREE, P.J., and BROWN, J., concur.