OPINION
{¶ 1} Defendant-appellant Gregory Maston appeals the decision of the Mahoning County Court No. 2, which denied his motion to suppress. The issues before us concern whether there existed reasonable suspicion to stop appellant's vehicle and whether there existed probable cause to arrest appellant for driving under the influence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Boardman Township Police Officer Cochran was patrolling the Southern Park Mall on the night of July 19, 2000. He drove down the aisles near the two open establishments, both of which feature bars, to ensure no cars had been or were being broken into. (Tr. 7). In securing the parking area at Buffalo Wild Wings, he noticed that a car at the end of a row was running without its lights on. There were two men in the car. (Tr. 8-9). The officer watched them for awhile, finding it unusual that they would sit in a running car for this long. (Tr. 13).
 {¶ 3} The car finally turned its lights on and started driving. In the process of watching the car, the officer had run the license plate number on the car. The check revealed that the registered owner had a suspended operator's license. (Tr. 11). The officer also received the physical description of this owner, which seemed to match that of appellant, who was in the driver's seat. The officer followed the car as it began driving. Rather than leave the mall, the car drove around the entire mall until it approached the same place it started. (Tr. 21).
 {¶ 4} At this point, the officer initiated a traffic stop. Instead of pulling over immediately, appellant proceeded to turn down an aisle and park in a space between two cars. (Tr. 30). The next occurrence that concerned the officer was when appellant exited the vehicle and began approaching the officer, rather than awaiting the officer's approach. (Tr. 26). The officer instructed appellant to stop in front of the cruiser. Appellant failed to comply with his instruction until it was repeated several times. (Tr. 27).
 {¶ 5} The officer noticed that appellant swayed back and forth as he stood and as he walked. (Tr. 29, 45). The officer also observed that appellant was very hesitant in making walking turns. (Tr. 45). Appellant was described as acting "disgusted" with the officer by throwing up his hands, turning around, and refusing to look at the officer. When the officer asked for identification to determine if appellant was the owner who had a suspended license, appellant stated that he did not have his license. (Tr. 29).
 {¶ 6} Appellant then worried the officer by walking back toward his car. The officer ordered appellant to return to the cruiser and stand on the passenger side, in order to provide a reactionary gap. Several times, appellant would begin to comply and then stop. At this point, the officer called for back up. (Tr. 32). When appellant finally complied, the officer handcuffed him to secure his position while the officer investigated his identification. (Tr. 36). See State v. Whitfield (Nov. 11, 2000), 7th Dist. No. 94CA111 (noting that the act of handcuffing is not necessarily an arrest as it may constitute a reasonable means of detaining an individual during an investigatory stop) and note that this is not an issue before us. The passenger in appellant's vehicle then disclosed appellant's name to the officer. The officer then arrested appellant for driving under suspension.
 {¶ 7} As appellant sat in the back of the patrol car after his arrest for driving under suspension, the officer noticed a strong odor of alcohol. (Tr. 38). Appellant admitted he drank a couple beers that night. (Tr. 46). Appellant refused to take any field sobriety tests including the horizontal gaze nystagmus test. (Tr. 38). The officer then decided to arrest appellant for driving under the influence. At the station, appellant repeatedly refused to follow instructions as to expelling breath into the breathalyzer; thus, he was considered to have refused the breath test. Apparently, other problems with appellant's behavior occurred at the station as well. As a result, appellant ended up being charged with resisting arrest and obstructing official business in case No. 00CRB868; and, driving under the influence, expired operator's license, driving under suspension due to failure to pay a reinstatement fee, and failure to display an operator's license in case No. 00TRC3806.
 {¶ 8} Appellant filed motions to suppress in both cases. He argued that there was a lack of reasonable suspicion to initiate a traffic stop and a lack of probable cause to arrest him for driving under the influence; he did not argue a lack of probable cause to arrest him for driving under a suspension. On December 12, 2001, the officer testified at the suppression hearing which was combined for both cases. On December 31, 2001, the trial court overruled appellant's suppression motions. Appellant filed notice of appeal, resulting in case No. 02CA33; however, this court dismissed the appeal for lack of a final order.
 {¶ 9} On April 25, 2002, appellant entered pleas in the two cases. In case No. 00CRB868, he pled no contest to an amended charge of minor misdemeanor disorderly conduct and was fined $100. In case No. 00TRC3806, he pled no contest to an amended charge of reckless operation and was fined $150. In lieu of serving thirty days in jail, the court ordered appellant to attend a three-day program and serve one year of probation. The court also suspended appellant's license for one hundred eighty days.
 {¶ 10} Appellant filed timely notice of appeal listing both trial court numbers, which resulted in the present appeal assigned case No. 02CA101. His brief along with a copy of the transcript of proceedings were filed in the prior dismissed appeal in case No. 02CA33. After a motion to dismiss for lack of prosecution was filed by the state, this court allowed appellant to file his brief in the proper appellate case. He did so in January 2003. As the state points out, he failed to refile the transcript of proceedings in this appellate case. Thus, the state initially asks that we refuse to address appellant's arguments as they require a review of the transcript which was not filed in the proper case. Due to the fact we allowed appellant to refile his brief, we shall consider the transcript which was filed in the prior appeal as being refilled and as a part of this appeal.
 ASSIGNMENT OF ERROR {¶ 11} Appellant's sole assignment of error alleges:
 {¶ 12} "The police officers from Boardman Township had no probable cause to initiate arrest of the appellant."
 {¶ 13} Although this assignment of error only mentions probable cause to arrest, the first argument thereunder states that there was no probable cause to stop or arrest. Initially, we should point out that each assignment of error should be argued separately. App.R. 12(A)(2); 16(A)(7). Thus, there should have been a separate assignment of error with regards to the stop.
 {¶ 14} Appellant's brief first contends that the officer did not run appellant's license plate until after he initiated the stop. However, the officer testified that he ran the license plate prior to the stop. See State v. Saltsman (Mar. 20, 2000), 7th Dist. No. 97CO48 (holding that running a license plate is not a stop and the reason for running the plate is irrelevant). Credibility is a matter for the trial judge who is in the best position to judge the demeanor, voice inflection, and gestures of the witnesses as they testify. State v.Smith (1997), 80 Ohio St.3d 89, 105; State v. Mills (1992),62 Ohio St.3d 357, 366. A reviewing court shall accept the findings of fact of the trial court if they are supported by competent and credible evidence. State v. Riesbeck (Mar. 15, 2002), 7th Dist. No. 862. There is competent and credible evidence to support a decision that the officer ran the license plate prior to stopping the vehicle. As such, this argument is without merit.
 {¶ 15} Appellant then states that the officer admitted that he did not have probable cause to stop appellant for driving under the influence. First, it appears that appellant is ignoring the fact that he was stopped due to the officer's belief that he was driving under suspension. It must then be emphasized that a stop and an arrest are wholly distinct concepts which are supported by wholly distinct standards. It is well settled that an officer does not need probable cause to make a traffic stop. Dayton v. Erickson (1996), 76 Ohio St.3d 2,11-12 (also stating that ulterior motives are irrelevant). Rather, the officer needs only reasonable suspicion. Id. To justify an investigatory stop of a vehicle, the officer must demonstrate specific and articulable facts which, when considered with the rational inferences that can be drawn, justify a reasonable suspicion that the individual to be stopped may be involved in criminal activity, including minor traffic violations. Id. See, also, Terry v. Ohio (1968), 392 U.S. 1, 21-22.
 {¶ 16} Here, the officer had a reasonable suspicion that appellant was driving under suspension. Multiple courts have held that an officer may run any license plate it chooses and when that plate comes back as being registered to a person who is not permitted to drive, the officer can reasonably infer that the owner is driving the vehicle. This is especially true when the driver's race and gender match that given in the physical description of the registered owner. See, e.g., Rocky River v.Saleh (2000), 139 Ohio App.3d 313, 327 (Eighth District); State v.Marker (1998), 130 Ohio App.3d 200, 202 (Sixth District); State v.Epling (1995), 105 Ohio App.3d 663, 665 (Ninth District), citing State v.Kavalec (Dec. 22, 1993), 9th Dist. No. 2246-M; State v. Owens (1991),75 Ohio App.3d 523, 525 (Second District).
 {¶ 17} Most importantly, we have held: "Where an officer knows that the owner of a vehicle has a suspended operator's license and draws the rational inference that the owner of the vehicle is likely to be operating the vehicle, there exists sufficient reasonable suspicion to justify an investigatory stop." State v. Webb (June 30, 1995), 7th Dist. No. 92-B-65, quoting Tallmadge v. McCoy (1994), 96 Ohio App.3d 604. Accordingly, the trial court did not err in determining that the officer possessed reasonable suspicion to stop appellant's vehicle.
 {¶ 18} Finally, we reach appellant's argument that the officer lacked probable cause to arrest him for driving under the influence. First, we should note that appellant was originally arrested for driving under suspension. His arrest for driving under the influence occurred after he had been arrested for driving under suspension and placed in the back of the patrol car. Our main concern is whether the totality of circumstances can support a finding of probable cause to believe that appellant had been driving under the influence. This entails an evaluation of whether the officer had information, derived from a reasonably trustworthy source, sufficient to cause a prudent person to believe the suspect was intoxicated. State v. Homan (2000), 89 Ohio St.3d 421, 426.
 {¶ 19} Thus, we shall collect the totality of the facts and circumstances in support of probable cause. See State v. Evans (1998),127 Ohio App.3d 56, 63, 64, fn. 2 (collecting many of the relevant factors to consider in determining whether to conduct further testing). The time was 11:15 p.m. Appellant was parked outside of a bar at the mall. Due to the time, only the restaurant/bars were open. Appellant sat in his parked car with the motor running for what the officer considered to be an unusual amount of time. When he finally began to drive, he circled the entire mall. When the officer initiated a stop to ascertain if the driver was the owner, appellant failed to immediately pull over, choosing to drive down an aisle and park between two other cars. Rather than waiting for the officer to approach, appellant exited the vehicle and began approaching. Appellant claimed that he did not have his identification. Appellant failed to follow the officer's instructions on at least two different occasions, causing the officer to fear for his safety as he repeated his instructions several times. At one point, appellant tried to return to his car. From these revelations, it seems that his attitude was fairly belligerent and uncooperative. Appellant would begin complying with the officer's instructions on where to stand; then, he would step back and begin this dance again. The officer described his conduct as inappropriate and believed it was attributable to alcohol consumption. Additionally, appellant swayed back and forth when standing. He also swayed when walking, and his turns were hesitant. These facts establish diminished motor coordination. Furthermore, appellant smelled strongly of alcohol. Appellant also admitted to drinking a couple beers.
 {¶ 20} The fact that there were no negative field sobriety tests results is not dispositive. Appellant refused to take a horizontal gaze nystagmus test and other field sobriety tests. As the Supreme Court of Ohio instructed, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered * * *." Homan (2000),89 Ohio St.3d at 427. See, also, State v. Blake, 7th Dist. No. 01CO44, 2002-Ohio-5221, at ¶ 36 (probable cause may exist even without field sobriety tests).
 {¶ 21} Additionally, although erratic driving is often a main factor in determining these cases, it is not required. In fact, it is usually more of a consideration when determining reasonable suspicion to stop the vehicle and then re-utilized as a factor for probable cause. Here, the officer had different reasonable suspicion to stop based on his belief that appellant was driving under suspension. Thus, he stopped the vehicle before any erratic driving could be observed. As aforementioned, the question is the totality of the facts and circumstances; no one factor is mandatory.
 {¶ 22} If appellant's argument on the lack of erratic driving and field sobriety tests were correct, then those who are validly stopped for reasonable suspicion of a license suspension or expiration could never be arrested for driving under the influence as long as they refuse to take field sobriety tests. Even under the liberal view in Finch, probable cause could be found here because there is evidence of impaired motor coordination. State v. Finch (1985), 24 Ohio App.3d 38 (holding that appearance of intoxication by way of bloodshot eyes and odor is not sufficient for probable cause to arrest absent evidence of impaired motor coordination). Erratic driving and failed field sobriety tests are not the only types of evidence that can establish impaired motor coordination. Appellant's swaying while walking and while standing, his difficulty making turns, and his refusal to follow instructions could also constitute evidence of impaired functioning due to alcohol consumption.
 {¶ 23} In considering the totality of facts and circumstances in this case, we hold that the trial court did not err in finding probable cause to arrest appellant for driving under the influence. In accordance, this assignment of error is overruled.
 {¶ 24} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.