JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, James Davenport, appeals his jury trial conviction for possession of drugs in violation of R.C. 2925.11. Defendant was riding in a car with a friend at 4:30 one February afternoon in the Fourth District when a police car passed them. The police car the officers were in had recently been equipped with a computer and the two officers were randomly running the license plates of cars they passed in order to see whether any were stolen or registered to unlicensed drivers. They ran the plates on the car defendant was riding in and discovered that it was registered to a man who was wanted on an outstanding burglary warrant.
 {¶ 2} The police then turned around their car and followed the car. Once they were close enough, the police activated their lights and siren and signaled the car to pull over. The car pulled to the curb, but when the officers got out of their police car and approached the car, the car drove away at a high rate of speed. The police returned to their car and gave pursuit and called over the radio for assistance.
 {¶ 3} The car braked suddenly about two blocks away from where it had first stopped. Both doors flew open and both the passenger and the driver jumped out of the car and ran in opposite directions. The police gave foot chase and the passenger (defendant) was eventually apprehended several blocks away. The driver was never found.
 {¶ 4} When the police returned to the scene, they found that because the car the defendant had been riding in had not been put into park when the occupants jumped out, it had continued moving and rolled onto the tree lawn and stopped against a tree. The police car was about twenty feet behind it. One of the officers noticed a plastic baggie sticking out of the snow about ten feet behind the back of the car. The baggie was found in the snow on the passenger's side near the curb.
 {¶ 5} The baggie contained a white substance which later proved to be crack cocaine. The police arrested defendant, who was charged with trafficking in drugs, possession of drugs, and possession of criminal tools.
 {¶ 6} Defendant filed a motion to dismiss, which the trial court denied. Defendant was tried to a jury and convicted of possession of drugs. He timely appeals, stating five assignments of error. The first three assignments of error address the court's denial of defendant's motion to suppress the evidence found subsequent to the traffic stop. Because defendant argues all three assignments of error in his first assignment, we will address all three together. They state:
I. The trial court erred in denying appellant's motion to suppress evidence where appellant was stopped pursuant to a random stop without cause.
II. The trial court erred in denying appellant's motion to suppress evidence where the officer was using the traffic investigation merely as a pretext for an otherwise unjustified search for drugs.
III. The trial court erred in denying appellant's motion to suppress evidence where the allegedly "random" license plate check was based on the officer's use of race-based drug related profile, denying appellant equal protection under the law.
 {¶ 7} Defendant claims that the police lacked probable cause to stop the car he was riding in. He claims that absent an articulable suspicion, the police had no right to intrude on his privacy by running the license plate check. He points out that both officers agreed that the car had not violated any traffic laws and that there was nothing observable about the car or its occupants to raise suspicion.
 {¶ 8} The trial court functions as the fact finder in a motion to suppress. It is in the best position to resolve factual questions and evaluate the credibility of witnesses and thereby to weigh the evidence. Rocky River v. Saleh (2000),139 Ohio App.3d 313, 319; State v. Freeman, Trumbull App. No. 2001-T-0008, 2002-Ohio-1176. The reviewing court must accept as true the trial court's findings of fact and then examine de novo the law to determine whether the trial court's decision was correct. Id.
 {¶ 9} For probable cause to exist, the facts and circumstances which are within the knowledge of the officers must be reasonably trustworthy and be sufficient to cause a prudent man to believe that the suspect had committed or was committing an offense. Id., citing Beck v. Ohio (1964), 379 U.S. 89, 91.
 {¶ 10} Defendant argues that the police lacked any factual basis to establish a reasonable suspicion or probable cause to justify the check on the license plates on the car. He alleges that the check of the plates without any justifiable suspicion violated his Fourth
 {¶ 11} Amendment right to be free from unreasonable search and seizure.
 {¶ 12} We disagree. A computer check of a license plate does not violate the Fourth Amendment. The courts of this state have held that, because a license plate is displayed on the outside of the car, there is no expectation of privacy in it. "It is well established that a police officer does not need to possess specific facts warranting suspicion of criminal behavior to run a license plate check on a vehicle traveling the public roadway."Saleh, supra, at 327. "One does not have any expectation of privacy in a license plate number which is required to be openly displayed on his vehicle. R.C. 4503.21. Moreover, a scan of a computer data bank, in order to obtain information relevant to the license number, involves no intrusion. Such a `search' does not interrupt a driver in his travel, nor restrain his person or detain him. In sum, it does not even constitute a `stop' underTerry v. Ohio (1968), 392 U.S. 1." State v. Bates (Aug. 12, 1987), Medina App. Nos. 1576 1577, 1987 Ohio App. LEXIS 8372 at *3.
 {¶ 13} Further, the officer does not err in presuming that the driver of the car is its owner. Saleh at 327; State v.Epling (1995), 105 Ohio App.3d 663, 665. Because the officers had information that the owner of the car had an active warrant out for his arrest, and because they were justified in presuming that the owner was the driver of the car, they were also justified in stopping the car. As required by Terry v. Ohio
(1968), 392 U.S. 1, they had a reasonable suspicion that the driver of the car had been engaged in criminal activity, that is, the burglary for which the warrant existed.
 {¶ 14} Defendant further claims, however, that the police had two impermissible purposes for this stop: to search the car for drugs and to follow up on the occupants, who as young black males, fit a profile the police were using. His claims that the police had ulterior motives, however, whether searching for drugs or racial profiling, do not prevent the stop from being valid.
 {¶ 15} [A]ll challenges to the validity of a traffic stop are subject to the same Terry standard of review, regardless of whether the defendant raises allegations of pretext. Under that standard, a law enforcement officer must have a reasonable suspicion, based on specific and articulable facts, that a motorist is or has been engaged in criminal activity before stopping a vehicle. No further inquiry beyond the requirement of reasonable suspicion is necessary or warranted. Thus, if the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop.
 {¶ 16} State v. Carlson (1995), 102 Ohio App.3d 585, 596. In the case at bar, the officers knew from investigating the license plate that the owner and presumed driver of the car had an outstanding warrant for his arrest. This is a sufficiently specific and articulable reason to justify the stop. Whether or not they suspected that the occupants of the car were involved with drugs is irrelevant.
 {¶ 17} Defendant's argument that the police were engaging in racial profiling is even more difficult for him to support. The officers testified that they were running plates of passing cars "at random." One of the testifying officers agreed with defendant's counsel, who noted that the 4th District is "a predominantly black area" and "is anywhere from 85 to 90 percent black." There was no testimony, however, that only in a black neighborhood did the police run plates of passing cars, or that they checked plates on cars with only black drivers.
 {¶ 18} Defendant further argues that when defense counsel asked Officer Mandzak to relate the description the computer provided of the car owner, the officer described his weight, height, gender, and eye and hair color, but did not specifically mention his race. Defendant argues in his appellate brief that the officer "went out of his way to avoid stating the racial description of the owner of the vehicle." Defense counsel questioned, "Why else would this police officer omit this defining characteristic if it was not the primary focus of his attention. As a result, it became conspicuous by its absence, demonstrating that this stop was both unprovoked and racially motivated." Appellant's brief at 11.
 {¶ 19} Defense counsel, however, never established that the description the computer provided included race. Without that evidence, no comparison can be made or inferences drawn on the basis of any alleged omission. We find no evidence of racial profiling, and we conclude the officer had a reasonable and articulable suspicion that the driver had an outstanding warrant against him and, therefore, the court did not err in denying defendant's motion to suppress.
 {¶ 20} Accordingly, these assignments of error are without merit.
 {¶ 21} For his fourth assignment of error, defendant states:
 {¶ 22} Appellant was convicted with evidence insufficient as a matter of law thereby denying him his due process rights guaranteed him by the fourteenth amendment to the united states constitution, and Article I Sec. 16 of the Ohio constitution.
 {¶ 23} Defendant argues that the evidence was not sufficient to support his conviction. His total argument consists of one sentence: "the State of Ohio failed to establish the elements of the crime of possession of drugs." Appellant's brief at 18. Defendant cites nothing in the record and states no reason why he believes the state failed to establish the element of possession.
 {¶ 24} An appellate brief should contain "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions
* * *." App.R. 16(A)(7), emphasis added. The evidence presented by the prosecution established crack cocaine was found on the ground on the passenger side of the vehicle — at the point where defendant had exited. The fresh snow showed only defendant's footprints in that area. Defendant's counsel has failed to show specifically why this evidence is insufficient. Accordingly, this assignment of error is overruled.
 {¶ 25} For his fifth assignment of error, defendant states:
 {¶ 26} The verdict is against the manifest weight of the evidence.
 {¶ 27} Defendant also argues that his conviction was against the manifest weight of the evidence. In assessing a manifest weight argument,
 {¶ 28} [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 {¶ 29} State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 30} Defendant argues that he never returned to the area of the car after he was apprehended, that no one established how long the bag of cocaine had been in the snow, and that "he was never out of the vehicle in the area where the bag was allegedly found." Appellant's brief at 21. In support of his claim that he was never in the area where the bag of cocaine was found, however, he cites only to page 68 of the transcript, which provides a portion of the suppression hearing, not the trial itself. The only testimony on this page, moreover, is that of one of the officers who states that the car had run up onto the tree lawn, that there were footprints in the snow, and that the passenger of the car ran perpendicular to the car when he ran away. This page does not contain any statement that defendant was never near the area where the cocaine was found.
 {¶ 31} On the other hand, one of the officers testified that he found the cocaine "about ten feet from where the car had come to rest." Tr. at 66. The other officer had testified that the car defendant jumped out of had "rolled forward probably another ten feet to the tree lawn and stopped." Tr. at 58. Further, one of the officers testified that he found the drugs at the very spot where defendant bailed out of the car. Tr. at 384, 392. It was reasonable for the jury to find more credible that defendant threw the cocaine down as he jumped from the car. Afer the car rolled forward, the cocaine would have been located behind the car. Most pursuasive is the evidence that the snow where the drugs were found showed only defendant's tracks.
 {¶ 32} The verdict is not against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Gallagher, J., Concurs.